**In the United States District Court
for the District of Kansas**

———————

No. 20-cv-01306-TC-RES

———————

EQUITY BANK,
*Plaintiff*

v.

LLOYD T. SCHNEIDER,
*Defendant and Counter Claimant*

v.

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER OF ALMENA STATE BANK,
*Counter Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Equity Bank moved for summary judgment to recover on a promissory note from Defendant Lloyd Schneider. Doc. 31. Schneider opposes the motion and seeks additional time for discovery, Doc. 44, as well as a hearing or, in the alternative, for leave to file a sur-reply, Doc. 53. For the following reasons, Schneider's motion for oral argument and leave to file a sur-reply is denied, and Equity Bank's motion for summary judgment is granted.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are

1

irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). When the moving party has the ultimate burden of proof at trial, establishing that it is entitled to judgment as a matter of law requires showing that no reasonable jury "could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (emphasis removed) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). In other words, such a party "must show *affirmatively* the absence of a genuine issue of material fact" and "must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Id.* (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013)). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that genuine issues about those dispositive matters remain for trial. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## B

This case involves a failed bank, a floundering cattle market agency, and the FDIC—with Defendant Lloyd Schneider caught in the middle. PLC was a market agency for cattle sales at weekly livestock auctions. Doc. 51 at 5, ¶ 1. Cattle buyers paid PLC, which deposited those payments into custodial accounts with Almena for the corresponding cattle shippers. Federal law regulates the operation of these custodial accounts through the Packers and Stockyards Act. *See* 7 U.S.C. § 181, *et seq.*; 9 C.F.R. § 201.42 (2017). This act requires market agencies to pay shippers promptly from these custodial accounts, whether or not the

agency had yet collected the full proceeds from the sale (*e.g.*, if the agency allowed the buyer to purchase on credit). *See* 9 C.F.R. §§ 201.42, 201.43.

In the year leading up to the note, PLC regularly incurred massive illegal deficits in these custodial accounts. Doc. 51 at 5–6, ¶ 1. Almena knew of the deficits and that PLC covered them by writing coordinated checks back and forth with a third party. *Id.* at 6, ¶ 3. Around the same time, PLC was subject to two consent orders with the U.S. Department of Agriculture that had imposed fines for these alleged violations. *Id.* at 7, ¶ 4. And in August 2017, Almena filed a suspicious activity report describing PLC's check-kiting behavior. *Id.* at 9, ¶ 9; Doc. 52-3.

As PLC's situation grew more precarious, Almena's Chairman, Shad Chandler, regularly contacted PLC's principal owner, Ty Gillum,[1] to resolve the situation. *See, e.g.*, Doc. 51 at 6, ¶ 3; Doc. 51 at 8, ¶ 6 ("These are the things which take banks down."). Almena even stopped payment on several checks written by PLC, causing multimillion dollar losses to another bank, which threatened legal action. Doc. 51 at 8, ¶¶ 7–8. Still, Almena continued to allow PLC to maintain large account deficits. *Id.* at 11, ¶ 16.

Eventually, Chandler encouraged Gillum to find a comaker for a promissory note to sure up PLC's finances. Doc. 51 at 11, ¶¶ 17–18; *see* Doc. 44-11 ("[W]e must have the overdraft accounts made positive by . . . October 20 2017 in order for us to consider any future business."). In came Schneider. He alleges that Chandler and Gillum "identified" him as a possible comaker for the note since he had business with PLC. Doc. 44-14 at ¶ 3. Indeed, Almena had just returned a $250,000 check that PLC had written to Schneider for cattle. *Id.*; *see* Doc. 51 at 12, ¶ 20. According to Schneider, he believed that PLC needed the loan to help support its ongoing business and clear custodial accounts by bridging any gap that might occur between when PLC had to pay shippers and when it received proceeds from buyers. Doc. 51 at 13, ¶ 23; Doc. 44-14 at ¶¶ 2–3.

On October 23, 2017, Schneider met with Chandler and Gillum at Almena's office. Schneider alleges that no one told him about PLC's issues or Almena's awareness of or involvement in them. Doc. 51 at

---

[1] Gillum was eventually prosecuted for bank fraud and making false statements in connection with his involvement in PLC's operations. He was convicted on over 30 counts. *See* Jury Verdict, *United States v. Gillum*, No. 19-40043, (D. Kan. Apr. 22, 2022), ECF No. 156.

13, ¶ 24; Doc. 44-14 at ¶¶ 5, 6. Instead, he claims that both parties represented the transaction as supporting PLC's ordinary course of business and addressing a "short-term problem." Doc. 44-14 at ¶¶ 3–4 ("I agreed to do this not only because I did not want to see the market business fail, but also because from a young age I have believed in helping out other businesspeople when I can."). He now maintains that he was unaware that PLC was "irretrievably insolvent" at the time, Almena and PLC knew he was unaware, and they nonetheless persuaded him to cosign the note. Doc. 51 at 13, ¶ 24.

Schneider signed the note that day. Both he and PLC were listed as borrowers, and Almena could collect from either. Doc. 44-29 at ¶¶ 13, 19. The principal amount was $2,000,000 for the stated purpose of a "Business Line of Credit." *Id.* at ¶ 8. Almena's meeting minutes described the loan's purpose as to "clear the custodial account of [PLC] on a daily basis." Doc. 51 at 15–16, ¶ 29. In the "Warranties and Representations" section, the borrowers represented that they were "duly organized, and validly existing and in good standing" and had "the power and authority to enter into this transaction and to carry on [their] business or activity as it [was then] being conducted and . . . [were] qualified to do so." *Id.* at ¶ 17. The note was later renewed by the parties a couple months later in December 2017, *see* Doc. 32-4, with Schneider still unaware, he contends, of PLC's and Almena's problems. That December note is the instrument at issue here. Doc. 44 at 4, ¶ 4. In November 2018, the parties executed an agreement to modify the note's maturity date to January 31, 2019. *Id.* at 5, ¶ 5.

The maturity date came and went without payment. Almena notified Schneider that the note was in default and demanded payment by March 2019. Doc. 44 at 6, ¶ 6. In May, Almena sent a second notice. *Id.* at 6, ¶ 7. Schneider refused to pay, and Almena sued him in Kansas state court. Doc. 1 at 5–7. Schneider filed several counterclaims and raised affirmative defenses, including fraud and breach of the duty of good faith and fair dealing. *See* Doc. 5.

Almena soon failed, and the FDIC stepped in as receiver (FDIC-R) and removed the case to federal court. Doc. 44 at 6–7, ¶¶ 9–10; Doc. 1. Once in federal court, the case was stayed pending the exhaustion of statutorily mandated administrative remedies. Doc. 10. During the stay, Equity Bank acquired the note from FDIC-R in a purchase and assumption agreement. Doc. 44 at 7–8, ¶¶ 12, 14. Accordingly, Equity Bank was substituted as Plaintiff, with FDIC-R remaining as Counter Defendant to Schneider's counterclaims. *See* Doc. 23. Within two months of the case reopening, Doc. 28, Equity Bank moved for summary judgment to recover on the note, Doc. 31.

Equity Bank argues that this is a simple breach of contract case—Schneider signed a promissory note and refuses to pay. Equity Bank asserts that there is no factual dispute that it holds the promissory note and that Schneider is obligated to pay according to its clear terms. Equity Bank further argues that Schneider's various defenses are barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e), both of which shield the FDIC's interests from challenges arising out of unwritten side agreements with banks when it steps in as receiver. On Equity Bank's motion, Magistrate Judge James O'Hara stayed discovery, finding it to be "the most efficient approach" and "very possible" that judgment would be entered against Schneider based on the issues raised in the summary judgment briefing. Doc. 48 at 3.

Schneider opposes summary judgment and argues that it would be premature at this stage. Doc. 44 at 23. He argues that further discovery is needed to evaluate his affirmative defenses. Those defenses are, primarily: that the note is void due to illegality of purpose and in violation of public policy; that the note was nullified by Almena's breach of the duty of good faith and fair dealing because Almena failed to disclose the true nature of the note and PLC's condition; and that the note is void due to fraud, including fraud in the execution and fraud in the factum. *Id.* at 23–25. Schneider requested oral argument on the summary judgment motion and leave to file a sur-reply. Doc. 53.

## II

Equity Bank has carried its burden of establishing that no genuine issue of material fact remains for its breach of contract claim and that it is entitled to judgment as a matter of law. As a result, it is entitled to summary judgment. Schneider's contract defenses are barred by 12 U.S.C. § 1823(e), and he has failed to show how additional discovery could affect that outcome.

### A

Two procedural issues need to be addressed at the outset. First, Schneider's requests for oral argument. Doc. 53. That request is denied because it would not aid the Court in its summary judgment ruling: the matter has been fully briefed.

Second, Schneider seeks leave to file a sur-reply, claiming that Equity Bank's reply relied on authorities not cited in its opening brief (chiefly, the Section 1823(e) discussion). Doc. 53 at 2. Under D. Kan. Rule 7.1(b), parties are permitted to file a dispositive motion, a response, and a reply. Sur-replies are typically not allowed, *James v. Boyd*

*Gaming Corp.*, 522 F. Supp. 3d 892, 902–03 (D. Kan. 2021), but may be permitted in rare cases with leave of court. When a moving party uses its reply to present new material (*e.g.*, new evidence or new legal arguments) and the court relies on that new material, the court should give the nonmoving party an opportunity to respond. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

Equity Bank's reply did not present new material or new legal arguments in support of its motion for summary judgment. To the contrary, the parties' pleadings demonstrate that the arguments in the reply directly responded to arguments that Schneider raised concerning his affirmative defenses.[2] Equity Bank moved for summary judgment on its theory of liability: that Schneider refused to pay on the note. Schneider responded that his defenses (*i.e.*, void contract, breach of duty of good faith and fair dealing, and fraud) precluded summary judgment and that these defenses were not barred by either the *D'Oench, Duhme* doctrine or its statutory complement, 12 U.S.C. § 1823(e). Doc. 44 at 23–40. Equity Bank's reply addressed that argument directly, asserting that Schneider had failed to identify a genuine dispute of material fact because, contrary to Schneider's response, his defenses were barred by the *D'Oench, Duhme* doctrine and Section 1823(e). Doc. 51 at 20–28; *see also Wright ex rel. Tr. Co. of Kansas v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) ("A fact is material if under the substantive law it is essential to the proper disposition of the claim."). Nothing about this posture warrants the rare allowance of a sur-reply. Equity Bank was entitled to argue in its reply that Schneider's position was incorrect without running afoul of the "new argument" prohibition. *See James*, 522 F. Supp. 3d at 905 ("Plaintiff did nothing wrong by responding to the arguments raised in defendants' Response and pointing out deficiencies in defendants' Response." (cleaned up)).

**B**

Equity Bank's entitlement to summary judgment hinges on the availability of Schneider's affirmative defenses. Equity Bank argues

---

[2] Schneider bears the burden of proof on his affirmative defenses. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015). A party moving for summary judgment on its own claims need not affirmatively negate the nonmovant's affirmative defenses. *See Valley Fresh Produce, Inc. v. W. Skyways, Inc.*, No. 17-CV-01450-PAB-KLM, 2019 WL 4695668, at *15 (D. Colo. Sept. 25, 2019); *Pantry, Inc. v. Stop–N–Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992). In such cases, the moving party need only show an absence of evidence to support the nonmoving party's affirmative defenses. *Leone*, 810 F.3d at 1153.

that a statute, The Federal Deposit Insurance Act of 1950, Pub. L. No. 81-797, § 13(e), 64 Stat. 873, 889, as amended at 12 U.S.C. § 1823(e), precludes those defenses. It provides that:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section . . ., either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—(A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

Section 1823(e) largely codified the *D'Oench, Duhme* doctrine. In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), the FDIC had acquired a note from a bank in a purchase and assumption transaction. The note's maker had sought to avoid payment by pointing to side agreements with the bank wherein the bank promised not to enforce the note. The Supreme Court rejected this defense because this kind of "secret agreement" would tend to deceive banking authorities, who had to evaluate a note's value quickly. *D'Oench, Duhme*, 315 U.S. at 460–61. Thus, the doctrine encourages regulators and their assignees to rely on the accuracy of a bank's records when evaluating its assets. *Castleglen, Inc. v. Resol. Tr. Corp.*, 984 F.2d 1571, 1577 (10th Cir. 1993). Without Section 1823(e)'s protection, prospective purchasers would avoid buying the assets of failed banks because they could be subject to claims and defenses based on unwritten side agreements.

Decades later, in *Langley v. FDIC*, 484 U.S. 86 (1987), the Supreme Court addressed the scope of "agreement," interpreting it broadly to

7

cover more than just promises to perform certain acts in the future.[3] *See FDIC v. Galloway*, 856 F.2d 112, 114 (10th Cir. 1988); *Adams v. Madison Realty & Dev., Inc.*, 937 F.2d 845, 857 (3d Cir. 1991) ("The word 'agreement' in section 1823(e) is not limited to express agreements between a bank and a borrower."). Langley had borrowed money from a bank to purchase property and later sought to avoid paying it back because the bank had misrepresented the nature of the property. After the bank failed, the FDIC was appointed as receiver and was substituted as plaintiff to recover on the note. The Court held that Section 1823(e) barred Langley's defense, which alleged fraud in the inducement and thereby sought to enforce an oral warranty on the property. But "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach." *Langley*, 484 U.S. at 96. So while the fraud made the FDIC's title in the note *voidable*, it did not make the note void. And voidable assets, the Court noted, are still assets for the purposes of the statute.[4] *Id.* at 94; *see also Cadlerock III, LLC v. Wheeler*, 779 F. App'x 519, 523 (10th Cir. 2019) (applying *Langley*).

That said, the *Langley* Court suggested that Section 1823(e) might not bar claims of fraud in the factum, like a forged signature to a contract. 484 U.S. at 93–94. Some later courts have characterized this as the "no asset exception" because the FDIC cannot have acquired an asset if that asset was void from the start. *See, e.g.*, *Cadlerock III, LLC*, 779 F. App'x at 523. *But see Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989) (expressing reluctance to read *Langley* as conclusively establishing fraud in the factum as an exception to Section 1823(e), since doing so might also exclude "conduct that is without doubt precisely the type of conduct to which the section was meant to apply").

---

[3] Shortly after *Langley*, Congress amended the statute to cover assets acquired by the FDIC in its capacity as receiver. Financial Institutions Reform, Recovery and Enforcement Act, Pub. L. No. 101–73 at § 217(4), 103 Stat. 183, 256 (1989); *see FDIC v. Giammettei*, 34 F.3d 51, 55 (2d Cir. 1994). This did not affect the meaning of "agreement." *FDIC v. State Bank of Virden*, 893 F.2d 139, 143 (7th Cir. 1990).

[4] This approach to Section 1823(e)'s application to contract defenses "is equally applicable" to affirmative tort claims for fraud and misrepresentation. *Castleglen, Inc.*, 984 F.2d at 1577–78.

## C

Schneider raises three principal defenses in his opposition to summary judgment. All are barred by Section 1823(e).[5] Because neither party disputes that the note is an "asset" within the meaning of Section 1823(e), the analysis turns on whether Schneider's defenses stem from an "agreement" that tends to diminish the interests of the FDIC and its assignees. If so, the question is whether that agreement satisfies the writing, approval, and filing requirements of Section 1823(e).

First, Schneider claims that the note is void due to illegality of purpose or because it otherwise was executed in violation of public policy. Doc. 44 at 23. He claims that the purpose of the note was "to aid in illegal activity" because it was "intended to prop up the cattle custodial account, which was being maintained illegally" according to the Packers and Stockyards Act, 7 U.S.C. § 181, *et seq.* Doc. 44 at 31. But this secret, nefarious intention between Almena and PLC is not evident in the note or contemporaneous bank records. The face of the document belies that point. In fact, the note itself states, "The purpose of this Loan is Renew Business Line of Credit." Doc. 32-4 at ¶ 9. Nothing about the note itself raises any questions regarding illegality or violation of public policy. The note is not "injurious to the interests of the public" and does not "contravene[] some established interest of society," "violate[] some public statute," or "tend[] to interfere with the public welfare or safety." *First Sec. Bank v. Buehne*, 501 P.3d 362, 366 (Kan. 2021) (quoting *In re Marriage of Traster*, 339 P.3d 778 (Kan. 2014)). It is simply a note in consideration for a loan with a stated purpose, and that purpose is not illegal. Schneider himself recognizes that "[c]o-signing a promissory note to aid another business's ability to cover their bank accounts is not inherently wrongful or contrary to public policy." Doc. 44 at 33. In other words, Schneider's illegality defense relies on there being a secret, unwritten agreement between two of the parties to the note regarding the "real" purpose of the funds that is contrary to the expressly stated purpose. As Equity Bank points out, this is precisely the sort of "agreement" that would not be revealed by a review of loan documents and would tend to mislead banking authorities and

---

[5] Schneider also argues that Equity Bank is not a holder in due course of the note under Kansas law and that therefore Equity Bank is "subject to the defenses of illegality and fraud." Doc. 44 at 25. But these defenses are the same ones barred by Section 1823(e). So whether Equity Bank is a holder in due course is irrelevant to whether Section 1823(e) bars Schneider's defenses. *See Adams v. Madison Realty & Dev., Inc.*, 937 F.2d 845, 855 (3d Cir. 1991).

diminish the FDIC's interest. Doc. 51 at 23. Section 1983(e) precludes its use as a defense.

Second, Schneider claims that the note was void *ab initio* due to fraud, in particular "fraud in the execution and fraud in the factum." Doc. 44 at 24, 38–40. Despite this characterization, Schneider has failed to allege facts that would establish fraud in the factum. Schneider asserts that Almena "fraudulently procured his signature" on the note by not disclosing the "true nature" of the note or the "true state" of PLC's affairs. *Id.* at 38. He claims he was "duped" and "led to believe that PLC was a going concern." *Id.* at 39. These are classic allegations of fraud in the inducement, not fraud in the factum.[6]

Contrast Schneider's allegations with what he does not allege. He does not claim, for example, that his signature was forged or that he actually signed a different document than the one that Equity Bank seeks damages under—both would likely constitute fraud in the factum. *See Castleglen, Inc.*, 984 F.2d at 1578 (citing Restatement (Second) of the Law of Contracts § 163 (1981) and E. Farnsworth, Contracts, § 4.10 (1990)). In other words, Schneider does not claim that he was "somehow prevented" from knowing the actual terms of the note and his obligations under it. *Id.* at 1578. The terms of the note are plain. Thus, the FDIC (as receiver), and later Equity Bank, acquired *voidable* title in the note, which is a cognizable interest under Section 1823(e). *Langley*, 484 U.S. at 94; *see also FDIC v. Giammettei*, 34 F.3d 51, 57–58 (2d Cir. 1994) (rejecting the argument that a bank's fraudulent inducement in violation of federal securities laws rendered the note void and outside the realm of Section 1823(e)).

To further see the "agreement" barred here, consider that Schneider essentially argues that there are conditions precedent to performing his obligations under the note. Those conditions are that Almena's representations regarding PLC's health were true, and that Almena did not withhold material information about the deal. In particular, Schneider alleges that Almena knew of PLC's desperate situation, of the problems with the custodial accounts and FBI investigations surrounding them, and of the likelihood that Schneider—not PLC—would be on the hook come payment time. Doc. 44 at 24–25. Since Almena and PLC intended to deceive Schneider, he claims that he could not fully appreciate the note's "true nature" and should not have to pay. But

---

[6] Whether the FDIC had actual knowledge of fraud prior to acquiring the note is not relevant to whether Section 1823(e) applies. *Langley*, 484 U.S. at 94.

10

these non-disclosures or affirmative misrepresentations by Almena are effectively warranties, or conditions, within the larger agreement, and are themselves agreements. *See Langley*, 484 U.S. at 90–91, 96 ("A condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach."); *see also, e.g.*, *FDIC v. Bell*, 892 F.2d 64, 65 (10th Cir. 1989) (finding failure to disclose material fact was analogous to *Langley*'s fraud in the inducement and an "agreement" under 1823(e)); *Galloway*, 856 F.2d at 116 (finding that a bank's fraudulent misrepresentation to a guarantor about a borrower's outstanding debt and credit risk was an "agreement" under 1823(e)). Schneider "sign[ed] a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment" and in doing so "lent himself to a scheme or arrangement that is likely to mislead the banking authorities." *Langley*, 484 U.S. at 93. Thus, Schneider's void *ab initio* argument fails to get around Section 1823(e)'s requirements.

Third, Schneider argues that summary judgment is improper because Almena "breached the duty of good faith and fair dealing inherent in every Kansas contract." Doc. 44 at 24 (citing *Bonanza, Inc. v. McLean*, 747 P.2d 792 (Kan. 1987)). His argument blurs "[t]he distinction between breach of an implied covenant of good faith and fair dealing *in the performance* of obligations that appear on the face of a note and breach of such a covenant with respect *to the promotion* of the note . . . ." *Giammettei*, 34 F.3d at 59, n.4 (emphasis added). Unlike a breach in the performance of a note's obligations, a breach with respect to the promotion of a note risks misleading bank examiners and is generally subject to Section 1823(e). *See id.* at 59. Thus, Schneider's repeated allegation that Almena executives knew of PLC's desperate situation and possible check kiting is substantively indistinguishable from a fraudulent inducement claim: it is aimed at Almena's actions in procuring the note rather than any deficiency in performance or fair dealing in carrying out obligations under the note. So his defense is barred. *See Clay v. FDIC*, 934 F.2d 69, 70–71, 73 (5th Cir. 1991) ("[B]ecause [defendants] cannot prove their claims [of breach of duty of good faith and fair dealing] on the face of documents available in the bank records, they cannot prove their cause of action without running afoul of *D'Oench, Duhme*.").

Schneider alleges two other actions under the "good faith and fair dealing" heading that more plausibly implicate breaches of performance obligations. But on closer examination, these too are barred by Section 1823(e). The first is Almena's "decision to pursue only Schneider to collect on the Note." Doc. 44 at 35. But this is not a breach. The note provides for joint and several liability, which permits the bank to

collect from either borrower. *See* Doc. 32-4 at 4.[7] Regardless, the crux of this defense is that Almena and PLC "concocted a scheme to find a guarantor" and then release PLC from liability. Doc. 51 at 26; Doc. 44 at 36 (referring to what Almena "knew" about PLC *before* the parties signed the note). This, too, would constitute an unwritten understanding or side agreement that is not present in the note and is therefore subject to Section 1823(e).

Schneider's second allegation is that after the note was executed, Almena "immediately us[ed] the funds to fill in gaps in PLC's bank accounts, created by the check-kiting scheme." Doc. 44 at 36. But the record shows that Almena advanced the funds to PLC's "general account" consistent with the note's essential terms. *See* Docs. 43-10 & 43-13. The note itself did not require Almena to direct how PLC would dispose of the funds after receiving them. Schneider's defense relies, therefore, on an implied covenant or condition that PLC would use the funds in a particular manner that is not expressly specified in the note. The fact that the funds were not used according to Schneider's expectations (which were not recorded on the face of the note or in contemporaneous bank records) does not allow Schneider to avoid his obligation under the note. If it did, Schneider would be "diminish[ing] or defeat[ing] the interest" of the FDIC in an asset acquired in its receivership based on Almena's violation of a condition *he* understood to be part of the agreement—yet not appearing in the note. 12 U.S.C. 1823(e). *Langley* compels otherwise. 484 U.S. at 96.

## D

Schneider has failed to show how additional discovery could change this result. He argues that summary judgment is premature because he needs opportunity for additional discovery due to Almena's delayed responses and lack of cooperation while the case was in state court. Doc. 44 at 20, ¶ 45; *id.* at 22–23 (citing Fed. R. Civ. P. 56(d)). But to obtain relief under Rule 56(d), a movant for summary judgment must submit an affidavit that both "identif[ies] the probable facts that are unavailable" and "stat[es] how additional time would allow for rebuttal of the adversary's argument for summary judgment." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Importantly, a Rule

---

[7] Paragraph 20 of the renewed note provides, "JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS. My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else is obligated on the Loan, or any number of us together, to collect the Loan."

12

56(d) motion must "explain *how* specific information [is] *essential* to [the] summary judgment opposition." *Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016).

In accordance with the rule, Schneider's counsel submitted an affidavit. Doc. 45. Yet on review, the affidavit shows that Schneider simply seeks more facts related to the substance of his affirmative defenses, not facts related to the statutory bar of Section 1823(e). Those latter facts are the ones that matter, like whether the relevant agreements (on which his defenses implicitly rely) were reduced to writing, approved by the board, and kept as an official bank record. Schneider's affidavit does not even hint at these sorts of facts. And any additional discovery would need to reveal more than "scattered evidence" leading to mere "inferences." *Castleglen, Inc.*, 984 F.2d at 1579; *see also F.D.I.C. v. Noel*, 177 F.3d 911, 918–19 (10th Cir. 1999). Thus, summary judgment for Equity Bank is not premature for want of discovery.

### E

Finally, stripped of his defenses, Schneider has failed to raise a genuine issue of material fact challenging Equity Bank's right to recovery under the note and extension agreement. Under Kansas law, a breach of contract consists of (i) a contract between the parties, (ii) sufficient consideration, (iii) the plaintiff's performance or willingness to perform in compliance with the contract, (iv) the defendant's breach of the contract, and (v) damages to the plaintiff caused by the breach. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (2013); *see also FV-I, Inc. for Morgan Stanley Mortg. Cap. Holdings, LLC v. Kallevig*, 392 P.3d 1248, 1256 (Kan. 2017). Schneider and Almena entered a contract when they signed the note. The note was supported by consideration (the $2,000,000 loan). Schneider agreed to its terms. He refused to pay when it came due. Almena had performed its obligations under the note in advancing funds to PLC. Equity Bank acquired the note from FDIC-R, which was Almena's successor. *See* 12 U.S.C. § 1821(d). As holder of the note, Equity Bank may assert its rights. *See* K.S.A. 84–3–301; *Kallevig*, 392 P.3d at 1256–57. Schneider has refused to pay the balance of the loan, which has caused $1,999,324.26, plus interest, in damages to Equity Bank. Doc. 44 at 6, ¶ 8. Having satisfied the elements of its breach of contract claim, Equity Bank has shown that no reasonable jury could find other than in its favor. Thus, Equity Bank is entitled to summary judgment.

Equity Bank seeks and is entitled to damages. Its papers describe the damages to include outstanding principal balance, accrued interest, expenses and attorney fees for collection, costs, and post-judgment

interest. Doc. 1 at 6; Doc. 32 at 6–7. As a result of Schneider's default, Equity Bank is entitled to the outstanding principal of $1,999,324.26 together with interest as provided in the promissory agreement. Doc. 44 at 6, ¶ 8. Equity Bank is also entitled to costs and to expenses and attorney fees associated with its collection efforts by the plain terms of the note, the availability of which Schneider has not challenged. Doc. 32-4 at ¶ 16; *see also Snider v. Am. Fam. Mut. Ins. Co.*, 298 P.3d 1120, 1125 (Kan. 2013) (noting the general rule allowing attorney fees by party agreement). The amounts of accrued interest, costs, and expenses and attorney fees remain to be determined. In a separate Order, the parties will be directed to coordinate a hearing at a mutually convenient time to resolve these and any other issues.[8]

### III

For the reasons set forth above, Schneider's motion for a hearing or leave to file a sur-reply, Doc. 53, is DENIED. Equity Bank's motion for summary judgment, Doc. 31, is GRANTED. Equity Bank is entitled to judgment for the outstanding principal of $1,999,324.26, to accrued interest according to the note, to court costs, and to its expenses and attorney fees as provided under the note—amounts to be determined. The stay of discovery, Doc. 48, remains in place, pending resolution of the remaining issues.

It is so ordered.

Date: August 4, 2022        s/Toby Crouse
                                                                 Toby Crouse
                                                                 United States District Judge

---

[8] Schneider's counterclaims against FDIC-R remain pending, as does his motion for leave to file a second amended answer and counterclaims, and for joinder, Doc. 55.